Warren State Hospital, Department of Public Welfare, Petitioner *v.* Edward S. Yaegle, Respondent.

Argued September 14, 1983, before Judges ROGERS, MACPHAIL and BARRY, sitting as a panel of three.

*James S. Marshall,* Assistant Counsel, for petitioner.

*Timothy D. McNair,* with him *Bradley H. Foulk* and *Marilyn Woolery,* for respondent.

OPINION BY JUDGE BARRY, February 28, 1984:

Petitioner, Warren State Hospital (Hospital), seeks review of an Order of the State Civil Service Commission (Commission) which determined that Edward Yaegle, Elevator Mechanic, regular status, respondent herein, at Warren State Hospital, had been properly suspended but improperly dismissed from his job as a result of a number of work-related incidents.

Respondent's suspension and subsequent dismissal stem from several alleged incidents which involved him and five employees. The Hospital initially notified respondent on or about September 24, 1981, of complaints by some female staff members. At that time the Hospital suspended respondent. Thereafter, it removed him from his position effective October 23, 1981. Respondent had not been notified of the complaints when suspended and terminated and had no opportunity to confront his accusers. According

to the Hospital, respondent's suspension and dismissal occurred because of serious allegations regarding inappropriate conduct in the form of verbal and physical sexual advances directed toward female employees.

On appeal to the Civil Service Commission, the Commission found that the Hospital appropriately suspended respondent for good cause but lacked just cause to justify his removal. As appointing authority, the Hospital had the burden of showing that the evidence supported a finding of good and just cause. The Hospital, according to the Commission, met its burden on respondent's suspension but failed to do so on his termination. This appeal by the Hospital followed.

Significant to the disposition of this case is the testimony of several female employees before the Commission. Gladys Meleen, a Clerk Typist II, testified that on September 22, 1981, the respondent came in back of her, grabbed her just above the waist, and forced her toward a room. She screamed for respondent to stop but he continued and laughed as he did. Later the same day, respondent encountered her without warning in a hallway, grabbed her around the waist, breathed in her ear, and said, "We could have some fun." (T. 15, 3/25/82). She testified that she was afraid as a result of these incidents. (T. 15-17, 3/25/82).

The respondent replied that he was "kidding" with Ms. Meleen and that her giggle "was more like a screaming giggle than a real desparate . . . cry for help scream." (T. 65, 3/25/82). Respondent further testified that another employee present, Mr. Meley, merely sat at his desk during the entire incident. Finally, respondent stated that Ms. Meleen had "kidded" with him before when she came up be-

hind him in a tunnel below the hospital, grabbed him around the waist and frightened him. (T. 63-65, 3/25/82).

Rebecca Spicer, a Psych. Aid Trainee, related an incident, on September 22, 1981, that occurred involving her and respondent. She stated that while transporting food carts from the hospital elevator, respondent grabbed her around the waist tightly, touched the side of her breast, and patted her buttocks. She further testified that respondent stopped the elevator, said, ''We could have some fun'', (T: 26, 3/25/82), touched the side of her breast, and stuck his fingers down the back of her pants. She also stated that she had been quite frightened by the incident. (T. 25-28, 3/25/82).

In response, respondent stated that he had just repaired the elevator when Ms. Spicer entered it with the food cart. Respondent further testified that they talked about her boyfriend until he had to test the elevator by stopping it where it had previously been stuck. Respondent denied that he ever touched Ms. Spicer while on the elevator. (T. 58-61, 3/25/82).

Julie Martin, a Food Service Worker II, testified that respondent leaped from behind some food carts, scared her, grabbed her, and tried to hug her. She stated that the incident frightened her and she wanted to get away from him. (T. 35-38, 3/25/82). Respondent testified that he ''kidded'' with Ms. Martin all the time, but she never complained to him about it. (T. 65-66, 3/25/82).

Jane Ness, a Food Service Worker II, stated that respondent would put his arms around her, hug her, and would jokingly say she had a nice body and he would like to see her nude. (T. 40-42, 3/25/82). In response, respondent testified that he ''kidded'' with Ms. Ness often and she always ''kidded'' with him.

He testified, moreover, that he never grabbed her and she never complained to him about any of their activities. (T. 66-67, 3/25/82).

Glendora McKown, a Food Service Worker I, testified about an alleged incident that occurred involving her and respondent in August, 1980. She stated that respondent came up behind her and hugged her. She giggled nervously and told him to let go, which he did when her supervisor entered the room. (T. 43-46, 3/25/82). Respondent testified that he did not recall the incident with Ms. McKown. (T. 67, 3/25/82).

Based on this testimony, the Commission found that respondent's interactions with these female staff members involved teasing and practical jokes and were not intended by him to be taken in a sexually provocative manner.

Under Section 807 of the Civil Service Act (Act), Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. 741.807, removal of a regular employee in a classified service requires a showing of just cause. Removal of a Civil Service employee is based on ''merit criteria related to the job and touches in some rational and logical manner upon competency and ability.'' *Appeal of Konick*, 34 Pa. Commonwealth Ct. 502, 383 A.2d 1002 (1978). The meaning of ''just cause'' is appropriately set forth in *Corder v. Civil Service Commission*, 2 Pa. Commonwealth Ct. 462, 467, 279 A.2d 368, 371 (1971). The Court therein stated:

> In defining ''just cause'' we are aided by a provision of the Civil Service Act, supra, at 71 P.S. 741.905(a). . . . The Civil Service Act states: ''No officer or employe of the Commonwealth shall discriminate against *any person* in recruitment, examination, appointment, training, promotion, retention, or any other personnel action with respect to the classified ser-

vice because of political or religious opinions or affiliations because of race, national origin *or other nonmerit* factors.'' We are able to discern that the legislative intent relating to one's relationship with the classified service turns upon a merit concept. This means that any ''personnel action'' carried out by the Commonwealth is to be scrutinized in the light of such merit criteria, as has the party failed to properly execute his duties, or has he done an act which hampers or frustrates the same. The criteria must be job-related and in some rational and logical manner touch upon competency and ability. (Emphasis in original.)

Whether the acts of the respondent constitute just cause thereby warranting removal from his job is a sensitive and serious issue. We believe respondent's conduct *may* constitute just cause for removal, as his conduct could well have impaired the ability of the women involved to perform their duties at the Hospital. The Commission found that respondent merely intended to joke and tease with the female employees but did not intend his conduct to be taken in a sexually provocative manner. This finding, however, does not focus on the heart of the issue, that is, whether these incidents in fact occurred and hampered, frustrated or interfered with the execution of the duties of respondent or the female staff members.

The Commission drew a broad conclusion concerning the incidents based substantially on respondent's subjective intent. Respondent's subjective intent, however, is irrelevant to the question of whether his conduct rose to the level of just cause to allow his dismissal. Even if respondent had been only teasing the women, this teasing may well have made it extremely difficult for them to do their jobs. The re-

spondent viewed the incidents with the female employees merely as joking and teasing, and even categorically denied the incident with Ms. Spicer; the women employees, however, no doubt were upset and frightened. If the incidents in fact occurred, they would have impaired the ability to perform their duties.[1]

We require more adequate findings consistent with this opinion, and, therefore, remand this case to the Commission for further findings.

ORDER

AND Now, February 28, 1984, this case is remanded for further consideration not inconsistent with this opinion. The order of the State Civil Service Commission dated August 17, 1982, at number 3681, is vacated.

Jurisdiction relinquished.

---

[1] The Chairman of the State Civil Service Commission, in her opinion, merely concluded in Finding of Fact Number Five that: "Appellant's interaction with the female staff employed by the appointing authority involved teasing and practical jokes and were not intended by him to be taken in a sexually provocative manner."